**HABBA MADAIO & ASSOCIATES LLP**
Alina Habba, Esq.
N.J. Bar Number 018592010
1430 US Highway 206, Suite 240
Bedminster, NJ 07921
(908) 869-1188
ahabba@habbalaw.com
*Counsel for Plaintiff, Caesar DePaco*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CAESAR DEPACO,**<br><br>                    **Plaintiff,**<br><br>    v.<br><br>**SIC NOTICIAS, SOCIEDADE INDEPENDENTE DE COMUNICACAO, IMPRESA SOCIEDADE GESTORA DE PARTICIPACOES SOCIAIS, SA, SPT TV, SEABRA PORTUGESE TELEVISION, PEDRO COELHO, RICARDO COSTA, MARTA REIS, JOHN DOES 1 through 10, said names being fictitious and unknown persons, and ABC CORPORATIONS 1 through 10, said names being fictious and unknown entities,**<br><br>                    **Defendants.** | **CIVIL ACTION NO.:**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Caesar DePaco, by and through his undersigned attorneys, Habba Madaio & Associates LLP, commences this action against the above-named defendants and alleges as follows:

1

## PARTIES

1. Plaintiff, Caesar DePaco ("Plaintiff"), is an individual residing in the County of Somerset in the State of New Jersey.

2. Defendant, SIC Noticias ("SIC Noticias") is a foreign corporate entity with its principal place of business in Portugal and, upon information and belief, doing business in the State of New Jersey.

3. Defendant, Sociedade Independente de Comunicacao ("SIC") is a foreign corporate entity with its principal place of business in Portugal, doing business in the State of New Jersey, and, upon information and belief, an owner and/or parent company of SIC Noticias.

4. Defendant, Impresa Sociedade Gestora de Participacoes Sociais, SA ("Impresa") is a foreign corporate entity with its principal place of business in Portugal, doing business in the State of New Jersey, and, upon information and belief, an owner and/or parent company of SIC Noticias.

5. Defendant, SPT TV ("SPT") is a foreign corporate entity with its principal place of business in Portugal, doing business in the State of New Jersey, and, upon information and belief, an owner and/or parent company of SIC Noticias.

6. Defendant, Seabra Portuguese Television ("Seabra") is a foreign corporate entity with its principal place of business in Portugal, doing business in the State of New Jersey, and, upon information and belief, an owner and/or parent company of SPT and/or SIC Noticias.

7. Defendant, Pedro Coelho ("Coelho") is a citizen of Portugal and, upon information and belief, a journalist, employee and/or agent of SIC Noticias, Impresa, SPT and/or Seabra.

8. Defendant, Ricard Costa ("Costa") is a citizen of Portugal and, upon information and belief, a director, employee and/or agent of SIC Noticias, Impresa, SPT and/or Seabra.

9. Defendant, Marta Reis ("Reis") is a citizen of Portugal and, upon information and belief, a director, employee and/or agent of SIC Noticias, Impresa, SPT and/or Seabra.

10. Defendants, John Does 1 through 10, are individuals whose identities are presently unknown to Plaintiff, including, but not limited to, publishers, editors, journalists, videographers, officers, managers, owners, principals, employees, agents and/or other duly authorized individuals who caused or contributed to the incident or incidents for which Plaintiff seeks damages, and/or are vicariously and/or otherwise liable for the acts, commissions, or other culpable conduct of those who did cause or contribute to the incidents alleged.

11. Defendants, ABC Corporations 1 through 10, are corporate entities presently unidentifiable to Plaintiff, including, but not limited to, media companies, video companies, television companies, publication companies, and/or other duly authorized corporate entities or affiliates who caused or contributed to the incident or incidents for which Plaintiff seeks damages, and/or are vicariously and/or otherwise liable for the acts, commissions, or other culpable conduct of those who did cause or contribute to the incidents alleged.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) by virtue of the diversity of citizenship of Plaintiff, a citizen of the State of New Jersey, and Defendants, citizens of a foreign state, and the amount in controversy, which exceeds Seventy-Five Thousand Dollars ($75,000) exclusive of interest and costs.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because at least one Plaintiff resides in this District and a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this District. In the alternative, to the extent 28 U.S.C. § 1391(b)(2) is not applicable, Venue is proper in accordance with 28 U.S.C. § 1391(b)(3).

## FACTS COMMON TO ALL COUNTS

14. SIC Noticias is a Portuguese television news network with international distribution to numerous foreign countries, including, but not limited to, the United States, France, Switzerland, Germany, Canada, Cape Verde, Andorra, Luxembourg, and Mozambique.

15. SIC Noticias produces, disseminates and/or broadcasts a television show entitled "Grande Reportage" which represents itself as a documentary-style program with an emphasis on "credibility, depth, [and] research."

16. On or around January 11, 2021, SIC Noticias broadcasted and/or otherwise distributed a "Grande Reportage" episode entitled "The Great Illusion: Dollar Signs and Other Demons (Part I)"

17. On or around April 9, 2021, SIC Noticias broadcasted and/or otherwise distributed a Grande Reportage episode entitled "How the European Far Right Was Financed."

18. On or around April 14, 2021, SIC Noticias broadcasted and/or otherwise distributed a Grande Reportage episode entitled "The Great Illusion: Dollar Signs and Other Demons (Part II)." all three episodes being collectively referred to as the "Episodes").

19. The Episodes are part of a five-part documentary series entitled "The Great Illusion" which focuses on the Chega! political party ("Chega"), a far-right political party that is widely considered to hold xenophobic and racist views.

20. Coelho is featured in, and credited as the journalist responsible for, the Episodes.

21. The Episodes concoct an egregiously false and sensationalized narrative revolving around Plaintiff's purported illegal schemes and involvement in supporting Chega, all for the purpose of defaming Plaintiff and depicting him a vile and defamatory light.

22. The Episodes contain numerous false, misleading and defamatory statements about Plaintiff, including, but not limited to, the following:

   a. Stating that Plaintiff is a "key player" of Chega.

   b. Stating that Plaintiff is the "main financier" of Chega.

   c. Stating that "evidence of [Plaintiff's connection to] Chega's legal funding is accumulating" and referring to Plaintiff's conduct as "raising suspicions."

   d. Stating Plaintiff is a "sympathizer or supporter" of Chega.

   e. Stating that Plaintiff is a "sponsor" of Chega.

   f. Insinuating that Plaintiff is involved in "creating schemes which come to life in the underworld of politics."

   g. Insinuating that Plaintiff is a "multi-millionaire with [an] obscure past life."

   h. Insinuating that Plaintiff has "stuffed [Chega]'s safes by non-legal means."

   i. Insinuating that Plaintiff's businesses are involved in illegal activities and/or misreporting of finances.

   j. Stating that "there are new data on the suspicious relationship between Chega and one of its funders, the multimillionaire, [Plaintiff]."

   k. Stating that Plaintiff was at a rally "where a militant made a Nazi salute," insinuating that Plaintiff is a supporter of Nazi ideals.

   l. Depicting an image of Plaintiff surrounded by symbols and references to extreme right-wing parties, intentionally implying Plaintiff's affiliation with same.

    m. Insinuating that Plaintiff had attempted to steal money from a prior girlfriend by stating that he "threatened her" and implying that he fled the country to escape capture.

    n. Stating that a neighbor had seen "the white car that [Plaintiff] had rented in parked in front of" the home where the alleged crime occurred.

    o. Insinuating that Plaintiff should have been found guilty of theft and/or robbery but that he avoided conviction because the 1989 trial "never took place because [Plaintiff] did not appear."

23. The foregoing statements in Paragraph 21 are false, misleading, and highly defamatory to Plaintiff.

24. Plaintiff is not a sympathizer, sponsor, supporter, backer, founder, advisor, strategist or in any way affiliated with Chega and, therefore, is not a "key player" of the party.

25. Plaintiff is not, and has never been, a "financier" of Chega, much less the "main financier."

26. Plaintiff has never made a financial contribution to Chega with the exception of a one-time donation within the permitted legal limit.

27. Therefore, Defendants' statements that Plaintiff is a "key player," "founder," "supporter," "sponsor" or "main financier" of Chega are demonstrably false and were asserted without a scintilla of supporting evidence.

28. Further, Plaintiff does not engage in any criminal activity, illegal schemes, or "non-legal means" and, in fact, Plaintiff has an unblemished criminal record.

29. The characterization of Plaintiff as a criminal is a complete fabrication with no basis in fact and merely an unsubstantiated attack on Plaintiff's character.

30. Plaintiff did not attend the public rally referenced in the Episodes and was only present in the relative vicinity for the sole purpose of attending a dinner with a political party president.

31. Plaintiff vehemently opposes Nazi, fascist, extreme right-wing and racist ideals and takes great offense to the Episode's attempt to associate him with such reprehensible and disturbing beliefs.

32. Defendants' attempt to connect with Plaintiff with such vile and offensive beliefs is an egregious and malicious attempt to assassinate Plaintiff's character and upstanding reputation in the community.

33. Regarding the alleged prior criminal offense, Plaintiff was not involved in an incident of theft, or any criminal activity for that matter, in or around 1989.

34. The neighbor referred by Defendants did not state that she saw Plaintiff's vehicle and, in fact, was unable to identify the make of the car.

35. Plaintiff has never fled any country to escape capture and has never attempted to conceal his whereabouts from any government or state.

36. As for the 1989 criminal trial, Plaintiff was never served with notice of the complaint, never tried in any legal proceeding, and the charges against him were dropped and/or dismissed by the prosecution.

37. Defendants' insinuation that Plaintiff committed the crime of theft and avoided justice because he "did not appear" for the trial is entirely false, misleading, and intended to imply Plaintiff's guilt despite a complete and utter lack of evidence.

38. In addition, on or around April 12, 2021, SIC Noticias published and/or disseminated and article entitled "Who Are You, Caesar?" (the "Article") which was credited to and/or authored by Coelho.

39. The Article depicted Plaintiff in an untrue, derogatory and defamatory manner as an unscrupulous man who lies about his academic degrees and qualifications.

40. The Article contains numerous false, misleading and defamatory statements about Plaintiff, including, but not limited to: (i) insinuating that Plaintiff is dishonest in character; and (ii) falsely represents that he possesses academic degrees from Harvard University and Oxford University, and stating that Plaintiff is "a man with connections to social and political movements associated with the far right [and] a friend of the security forces."

41. Defendants' statements set forth in the Article are false, defamatory and complete fabrications with no basis in fact.

42. As set forth herein, the false statements, misrepresentations and innuendo set forth by Defendants in the Episodes and the Article are highly damaging and defamatory to Plaintiff.

43. Defendants were aware, or should have been aware, that their misleading, false and defamatory statements in the Episodes and the Article would cause substantial harm to Plaintiff.

44. Nonetheless, Defendants proceeded to disseminate, distribute, broadcast and/or publish the false, misleading and defamatory statements contained in the Episodes and the Article, knowing that they would cause substantial harm to Plaintiff.

45. Defendants disseminated, broadcasted and/or published these statements knowingly that they were false or made them with reckless disregard for the truth.

46. To the extent actual malice is required to be pleaded and proven, Defendants made the false statements either knowing that the statements were false or with reckless disregard for the truth of the matter contained in the false statements.

47. As a direct and/or proximate result of Defendants' actions and their dissemination of egregious falsehoods, Plaintiff has suffered substantial harm, including, but not limited to, dismissal from his position as Honorary Consul of the Portuguese Republic, tarnished reputation, economic injury, loss of economic advantage, loss of profits, depiction in a false light and damage to public image.

**COUNT I**
**(DEFAMATION AND DEFAMATION *PER SE*)**

48. Plaintiff re-asserts and re-alleges the allegations contained within the preceding paragraphs as if set forth at length herein.

49. Defendants disseminated, distributed, broadcaster and/or published false and defamatory statements regarding Plaintiff, as fully set forth in this Complaint, including, but not limited to, those statements made in the Episodes, as fully set forth in Paragraph 22, and those statements made in the Article, as fully set forth in Paragraph 40.

50. Defendants' false statements were disseminated through SIC Noticias and distributed, broadcasted and/or circulated internationally, including in the United States.

51. Defendants' false statements were of and concerning Plaintiff.

52. Defendants' conduct in disseminating, distributing, broadcasting and/or publishing the false statements was, at a minimum, negligent.

53. To the extent actual malice is required to be pleaded and proven, Defendants made the false statements either knowing that the statements were false or with reckless disregard for the truth of the matter contained in the false statements.

54. Defendants' false statements are not protected by any privilege or authorization.

55. Defendants' conduct was willful, malicious, and oppressive, in that Defendants knew that the false statements would cause significant harm to Plaintiff. As such, in addition to compensatory damages and/or presumed damages, Plaintiff demands punitive damages relating to Defendants' dissemination, circulation, publication and maintenance of the above-referenced false statements, in an amount to be determined at trial.

56. In addition, Defendants' false statements accuse Plaintiff of committing a crime by stating that he has engaged in illegal schemes, committed theft, and obtained finances through "non-legal means," which, in and of itself, is defamation *per se*.

57. Defendants' false and defamatory statements in the Episodes and the Article constitute defamation and/or defamation per se.

58. In addition, Plaintiff has incurred special harm as a direct result of the false statements, including, but not limited to, his dismissal from his position as Honorary Consul of the Portuguese Republic.

59. Whether by defamation, defamation per se or by special harm, Plaintiff has incurred, is suffering and will continue to suffer damages.

60. Plaintiff is entitled to damages, costs, and fees as permitted by law.

## COUNT II
### (FALSE LIGHT)

61. Plaintiff re-asserts and re-alleges the allegations contained within the preceding paragraphs as if set forth at length herein.

62. Defendants published and disseminated the false statements set forth in the Episodes, as fully set forth in Paragraph 22, and those statements set forth in the Article, as fully

set forth in Paragraph 40, through SIC Noticias, which is disseminated, distributed, broadcasted and/or circulated to the public internationally by television, print and/or digital media.

63. Defendants' false and defamatory publicized statements are of and concerning Plaintiff.

64. Defendants knew or should have known that their publicized statements were false and would place Plaintiff in a false light and/or acted with reckless disregard as to whether the publicized statements were false and the false impression created by their publication of same.

65. Defendants' publicized statements misrepresented Plaintiff's character, history and beliefs to such a degree that a reasonable person would find the statements highly offensive.

66. Defendant's publicized statements placed Plaintiff in a false light and, as a direct result thereof, caused Plaintiff to incur, and continue to incur, damages.

67. Plaintiff is entitled to damages, costs, and attorneys' fees as permitted by law.

## COUNT III
## (TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE)

68. Plaintiff re-asserts and re-alleges the allegations contained within the preceding paragraphs as if set forth at length herein.

69. At all relevant times, Plaintiff has had protected interests in his serving in his position as Honorary Consul of the Portuguese Republic as well as in his other business relationships and dealings, including in his position as owner of Summit Nutritional International and other business endeavors.

70. Defendants knew of these protected interests in Plaintiff's advantageous business and potential business relationships.

71. Under the guise of journalism, Defendants intentionally, wrongfully and without justification disseminated false and defamatory statements about Plaintiff and viciously attacked and defamed Plaintiff's character for the purpose of causing Plaintiff to lose his position as Honorary Consul of the Portuguese Republic and otherwise interfere with and/or harm Plaintiff's business relationships and potential business relationships.

72. As a result of Defendants' false and defamatory statements, Plaintiff was dismissed from his position as Honorary Consul of the Portuguese Republic, his reputation has been tarnished, and customers, dealers, suppliers, and other business associates of Plaintiff have refused to do business with him and/or his companies.

73. The aforementioned business opportunities were reasonably likely to have occurred but for Defendants' interference, resulting in damage to Plaintiff in the form of tarnished reputation, loss of good will, and loss of profits and/or business opportunities.

74. Defendants acted maliciously and in bad faith in disseminating their false and defamatory statements and intentionally and tortiously interfered with Plaintiff's business relationships.

75. Defendants made the false statements knowing that they were false and/or misleading when made and did so for the purpose of intentionally interfering with Plaintiff's service in his position of Honorary Consul of the Portuguese Republic and harming his other business relations and opportunities.

76. Defendants' conduct constitutes tortious interference with economic advantage.

77. As a direct and proximate result of the tortious interference of Defendants, Plaintiff has incurred, and will continue to incur, damages.

78. Plaintiff is entitled to damages, costs, and attorneys' fees as permitted by law.

## COUNT IV
## (LIBEL AND LIBEL *PER SE*)

79. Plaintiff re-asserts and re-alleges the allegations contained within the preceding paragraphs as if set forth at length herein.

80. Defendants' conduct in publishing in writing the false statements contained in the Article was, at a minimum, negligent.

81. To the extent actual malice is required to be pleaded and proven, Defendants made the false statements either knowing that the statements were false or with reckless disregard for the truth of the matter contained in the false statements.

82. Defendants' conduct was willful, malicious, and oppressive, in that Defendants knew that the false statements would cause significant harm to Plaintiff. As such, in addition to compensatory damages and/or presumed damages, Plaintiff demands punitive damages relating to Defendants' publication and maintenance of the above-referenced false statements, in an amount to be determined at trial.

83. In addition, Defendants' false statements relate to Plaintiff's business, profession or office by falsely asserting that Plaintiff misrepresents his academic background and qualifications, which, in and of itself, is libel *per se*.

84. Defendants' false and defamatory statements constitute libel and/or libel *per se*.

85. Plaintiff is entitled to damages, costs, and attorneys' fees as permitted by law.

## COUNT V
## (SLANDER AND SLANDER *PER SE*)

86. Plaintiff re-asserts and re-alleges the allegations contained within the preceding paragraphs as if set forth at length herein.

87. Defendants' conduct in broadcasting and communicating the false statements contained in the Episodes was, at a minimum, negligent.

88. To the extent actual malice is required to be pleaded and proven, Defendants made the false statements either knowing that the statements were false or with reckless disregard for the truth of the matter contained in the false statements.

89. Defendants' conduct was willful, malicious, and oppressive, in that Defendants knew that the false statements would cause significant harm to Plaintiff. As such, in addition to compensatory damages and/or presumed damages, Plaintiff demands punitive damages relating to Defendants' publication and maintenance of the above-referenced false statements, in an amount to be determined at trial.

90. In addition, Defendants' false statements accuse Plaintiff of committing a crime by stating that he has stating that he has engaged in illegal schemes, committed theft, and obtained finances through "non-legal means," which, in and of itself, is slander *per se*.

91. Defendants' false and defamatory statements constitute slander and/or slander *per se*.

92. Plaintiff is entitled to damages, costs, and attorneys' fees as permitted by law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment as follows:

a. Injunctive relief requiring Defendants to rescind and retract all of the false statements made against Plaintiff;

b. Awarding Plaintiff actual, compensatory and consequential damages against all of the Defendants, joint and severally, in an amount to be determined at trial;

    c. Awarding Plaintiff punitive damages against all of the Defendants, jointly and severally, in an amount to be determined at trial;

    d. Enjoining Defendants from continuing their unlawful conduct, including but not limited to, enjoining Defendants from making the false statements complained of herein;

    e. Awarding Plaintiff his attorneys' fees, costs, and disbursements; and

    f. For such other relief as the Court deems equitable, just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury of any issue so triable as of right pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Dated: July 30, 2021    By: _____
Alina Habba, Esq.
HABBA MADAIO & ASSOCIATES LLP
*Counsel for Plaintiff, Caesar DePaco*
1430 U.S. Highway 206, Suite 240
Bedminster, NJ 07921
(908) 869-1188
ahabba@habbalaw.com

**CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2**

I hereby certify that to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding with the exception of a criminal action pending in the country of Portugal in which the parties are as follows: Cesar DePaco (plaintiff), Sociedade Independente de Comunicado (defendant), Pedro Manuel Rouxinol Samina Coelho (defendant), Ricardo De Paiva da Costa (defendant), and Marta Brito Dos Reis (defendant).

Dated: July 30, 2021            By:    _____
                                       Alina Habba, Esq.
                                       HABBA MADAIO & ASSOCIATES LLP
                                       *Counsel for Plaintiff, Caesar DePaco*
                                       1430 U.S. Highway 206, Suite 240
                                       Bedminster, NJ 07921
                                       (908) 869-1188
                                       ahabba@habbalaw.com

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 201.1

I hereby certify pursuant to Local Arbitration Rule, L. Civ. R. 201.1(d)(1) that the above-captioned action is not subject to compulsory arbitration because the damages sought by Plaintiff are in excess of $150,000.00, exclusive of interest and costs and any claim for punitive damages.

Dated: July 30, 2021        By:    _____
                                   Alina Habba, Esq.
                                   HABBA MADAIO & ASSOCIATES LLP
                                   *Counsel for Plaintiff, Caesar DePaco*
                                   1430 U.S. Highway 206, Suite 240
                                   Bedminster, NJ 07921
                                   (908) 869-1188
                                   ahabba@habbalaw.com