# UNITED STATES DISTRICT COURT

### DISTRICT OF NEW JERSEY
### (609) 989-2182

CHAMBERS OF
FREDA L. WOLFSON
CHIEF JUDGE

Clarkson S. Fisher Federal
Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

## LETTER ORDER

September 12, 2022

Alina Habba, Esq.
Habba Madaio & Associates LLP
1431 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921

Joseph N. Froehlich, Esq.
Locke Lord LLP
Brookfield Place
200 Vesey Street
20th Floor
New York, New York 10281

RE:   ***Caesar DePaco v. SIC Noticias, et al.***
      **Civ. Action No. 21-14402 (FLW)**

Counsel:

In this tort action, Defendants, SIC Noticias, Sociedade Independente de Comunicação S.A. ("SIC S.A."), Impresa Sociedade Gestora de Participações Sociais S.A. ("Impresa SGPS"), Pedro Coelho ("Coelho"), Ricardo Costa ("Costa"), and Marta Reis ("Reis") (collectively, the "Moving Defendants"), move to dismiss the Amended Complaint filed by Plaintiff, Caesar DePaco ("DePaco" or "Plaintiff"), for, among other things, lack of personal jurisdiction.[1] For the reasons that follow, the Moving Defendants' motion is **GRANTED**; Plaintiff's claims are dismissed without prejudice.

## I.   BACKGROUND

The following facts are derived from Plaintiff's Amended Complaint (ECF No. 12 ("Am. Compl.")) and presumed to be true for purposes of the instant motion.

---

[1] This case was originally assigned to Hon. Anne E. Thompson, U.S.D.J., and on April 19, 2022, it was reassigned to this Court. ECF No. 16.

A.    **Factual Background and Procedural History**

This action arises out of allegedly defamatory statements made about Plaintiff in a Portuguese article and documentary television series. Between approximately January 2021 and April 2021, Defendant SIC Noticias, a foreign corporate entity with its principal place of business in Portugal, broadcasted or otherwise distributed three episodes of a five-part documentary series titled "The Great Illusion" (the "Episodes"). *Id.* ¶¶ 2, 15-19. On April 12, 2021, SIC Noticias published and/or disseminated an article titled "Who Are You, Caesar?" (the "Article"). *Id.* ¶ 38. The Episodes and Article are credited to Defendant Coehlo, a journalist, employee, and/or agent of SIC Noticias, Impresa SGPS, non-moving Defendant SPT TV ("SPT"), and/or non-moving Defendant Seabra Portuguese Television ("Seabra").[2] *Id.* ¶¶ 7, 20, 38. Defendants Costa and Reis are directors, employees, and/or agents of the same entities. *Id.* ¶¶ 8-9. All three individuals are citizens of Portugal. *Id.* ¶¶ 7-8. Defendants SIC S.A. and Impresa SGPS, foreign corporate entities with their principal places of business in Portugal, are both owners or parent companies of SIC Noticias. *Id.* ¶¶ 3-4.

Plaintiff, a New Jersey resident, alleges that the Episodes and Article contained numerous defamatory statements about him. *Id.* ¶¶ 1, 22, 40. Specifically, Plaintiff claims the Episodes falsely stated, among other things, that Plaintiff is a "key player," a "sympathizer or supporter," and the "main financier" of Chega!, which Plaintiff explains is "a far-right political party" in Portugal "that is widely considered to hold xenophobic and racist views." *Id.* ¶¶ 19, 22. He further alleges that the Episodes "[i]insinuat[ed] that Plaintiff should have been found guilty of theft and/or robbery" during a 1989 trial. *Id.* ¶ 22. In addition, Plaintiff asserts that "[t]he Article depicted Plaintiff in an untrue, derogatory and defamatory manner as an unscrupulous man who lies about his academic degrees and qualifications." *Id.* ¶ 39.  Plaintiff alleges that Defendants disseminated, broadcasted, and/or published the challenged statements in the Episodes and Article knowingly or with reckless disregard for the truth, and that as a direct and/or proximate result of Defendants' actions, Plaintiff suffered substantial harm, including, but not limited to, "dismissal from his position as Honorary Consul of Cape Verde, tarnished reputation, economic injury, loss of economic advantage, loss of profits, depiction in a false light and damage to public image." *Id.* ¶¶ 45-47.

On August 9, 2021, Plaintiff filed an Amended Complaint asserting claims of defamation and defamation *per se* (Count I); false light ("Count II"); tortious interference with prospective economic advantage ("Count III"); libel and libel *per se* ("Count IV"); and slander and slander *per se* ("Count V"). *See generally* Am. Compl. On February 17, 2022, the Moving Defendants filed a Motion to Dismiss the Amended Complaint ("Def. Mot.") with prejudice for, among other things, lack of personal jurisdiction. ECF No. 12-1. Plaintiff filed a Brief in Opposition to the Moving

---

[2] Non-moving Defendants SPT and Seabra are foreign corporate entities with their principal places of business in Portugal. Am. Compl. ¶¶ 5-6.  These Defendants appear to have been served, ECF Nos. 4 & 5, but they have neither answered the Amended Complaint nor had counsel enter an appearance on their behalf. While Plaintiff may move for default against these Defendants, Plaintiff must bear in mind that if the Court lacks personal jurisdiction over the non-moving Defendants, the Court cannot enter judgment against them. In addition, if Plaintiff does not move within the appropriate time, this action may be dismissed against the non-moving Defendants for failure to prosecute. *See* Fed. R. Civ. P. 41(b).

Defendants' Motion to Dismiss ("Pl. Opp'n") on April 11, 2022. ECF No. 15. On May 9, 2022, the Moving Defendants filed their reply brief ("Def. Reply"). ECF No. 17.

### B.   Companion Case

In 2021, Plaintiff brought a similar action in this Court against a different group of Portuguese corporations and individuals (the "Companion Case"). *See DePaco v. Cofina Media, SA*, No. 21 14409, 2022 WL 3646616 (D.N.J. Aug. 24, 2022). There, as here, Plaintiff alleged that the defendants published an article containing numerous false and defamatory statements about him, including that "he is the 'main financier' of the Chega! Party," that he "is a 'sympathizer or supporter' of Chega," and that he "engages in criminal activity." *Id.* at *1. By Opinion and Order dated August 24, 2022, this Court granted the defendants' motion to dismiss the Companion Case for lack of personal jurisdiction. *Id.* at *6. The Court found no basis for exercising specific personal jurisdiction over the nonresident defendants because Plaintiff "failed to show specific activity indicating that Defendants 'expressly aimed' their allegedly tortious conduct at the forum state of New Jersey" in accordance with "the 'effects test' set forth in" *Calder v. Jones*, 465 U.S. 783 (1984). *Id.* at *5.

## II.   LEGAL STANDARD

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of demonstrating the facts that establish personal jurisdiction" over the moving defendants. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). In order "[t]o meet that burden, [plaintiff] must 'establish[ ] jurisdictional facts through sworn affidavits or other competent evidence.' " *Cerciello v. Canale*, 563 F. App'x 924, 925 n.1 (3d Cir. 2014) (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 101 n.6 (3d Cir. 2004)). "Once the plaintiff has shown minimum contacts, the burden shifts to the defendant, who must show that the assertion of jurisdiction would be unreasonable." *Ameripay, LLC v. Ameripay Payroll, Ltd.*, 334 F. Supp. 2d 629, 633 (D.N.J. 2004) (citing *Mellon Bank (East) PSFS v. Farino*, 960 F.2d 1217, 1226 (3d Cir. 1992)).

"[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc.*, 384 F.3d at 97; *see Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003); *Murphy v. Eisai, Inc.*, 503 F. Supp. 3d 207, 213 (D.N.J. 2020). Still, the plaintiff " 'bears the burden to prove, by a preponderance of the evidence,' that personal jurisdiction is proper." *Cerciello*, 563 F. App'x at 925 n.1 (quoting *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992)).

## III.   DISCUSSION

The Moving Defendants argue that the Amended Complaint should be dismissed for, among other things, lack of personal jurisdiction. Def. Mot. at 15–21. In opposition, Plaintiff contends that personal jurisdiction is proper because the Moving Defendants committed intentional torts against a New Jersey resident with foreseeable effects in that forum. Pl. Opp'n at 8-14. In the alternative, Plaintiff requests jurisdictional discovery. Pl. Opp'n at 14–15. As in the Companion

Case, I find that this Court lacks personal jurisdiction over the Moving Defendants because they did not expressly aim their tortious conduct at New Jersey. Jurisdictional discovery is also not warranted here, because the Amended Complaint fails to set forth reasonably particularized allegations indicating the possibility that the Moving Defendants have sufficient minimum contacts with the forum state.

### A.   Personal Jurisdiction

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing Fed. R. Civ. P. 4(e)). "[T]he New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (citations omitted). "Personal jurisdiction under the Due Process Clause depends upon the relationship among the defendant, the forum, and the litigation." *Id.* (internal quotation marks and citation omitted). "There are two distinct theories under which personal jurisdiction can arise: general and specific." *Allaham v. Naddaf*, 635 F. App'x. 32, 37–38 (3d Cir. 2015) (citing *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994)). Here, Plaintiff only contends that specific jurisdiction exists over the Moving Defendants. Pl. Opp'n at 10.

Specific jurisdiction exists over a non-resident defendant where the plaintiff's claim "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n.8 (1984)). Where, as here, a plaintiff claims to be the target of an out-of-state defendant's allegedly tortious activity, the court's specific jurisdiction inquiry is governed by the "effects test" set forth in *Calder*, 465 U.S. at 783. *See Remick v. Manfredy*, 238 F.3d 248, 258 (3d Cir. 2001) ("[T]he Supreme Court set forth the 'effects test' for determining personal jurisdiction over nonresident defendants who allegedly committed an intentional tort outside the forum."). In *Calder*, an entertainer residing in California brought a lawsuit for libel against the author and the editor of an article published in the National Enquirer. 465 U.S. at 785–86. Both defendants were residents of Florida. *Id.* The Supreme Court held that the defendants could "reasonably anticipate being haled into court" in California because of the "effects" of their conduct in California— namely, the "potentially devasting impact" upon the plaintiff "in the State in which she lives and works and in which the National Enquirer has its largest circulation." *Id.* at 789–90; *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 772–74 (1984) (finding federal court in New Hampshire could exercise personal jurisdiction over nonresident defendant in libel suit where defendant's "contacts with New Hampshire consist of the sale of some 10 to 15,000 copies of Hustler magazine in that State each month").

Under the "effects test," the Third Circuit has held that the plaintiff must show: "(1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and] (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." *IMO Indus., Inc.*, 155 F.3d at 265–66. Only if the "expressly aimed" element of the test is satisfied will the court consider the other two elements. *See Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007) (citing *IMO Indus.*, 155 F.3d at 266). A defendant's conduct is "expressly aimed" at the relevant forum if a plaintiff can demonstrate "the defendant knew that the plaintiff would suffer the brunt of the harm caused

by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *Id.* at 298 (quoting *IMO Indus.*, 155 F.3d at 266). While "a plaintiff's residence is relevant to the 'jurisdictional inquiry,' " "the state of a plaintiff's residence does not on its own create jurisdiction over nonresident defendants." *Id.* "Jurisdiction is proper when the state of a plaintiff's residence is 'the focus of the activities of the defendant out of which the suit arises.' " *Id.* (quoting *Keeton*, 465 U.S. at 780).

Here, similar to the Companion Case, Plaintiff argues that personal jurisdiction is proper under *Calder* because (1) the Moving Defendants published the allegedly defamatory statements with full knowledge that Plaintiff is a New Jersey resident, (2) the Moving Defendants made the Episodes "widely available" and published the Article online and in print "knowing and intending" that it would be read in New Jersey, and (3) New Jersey has a notable population of Portuguese-Americans who may be a potential audience for the allegedly defamatory publications.[3] Pl. Opp'n at 11-14. While Plaintiff need only establish a prima facie case of personal jurisdiction, *Miller Yacht Sales, Inc.*, 384 F.3d at 97, these bare allegations do not amount to "specific activity indicating that [Defendants] expressly aimed their tortious conduct at [New Jersey]." *Marten*, 499 F.3d at 298.

First, Plaintiff's contention that he "is a resident of New Jersey and Defendant published the defamatory information while being fully aware of Plaintiff's residence" is insufficient to confer personal jurisdiction. Pl. Opp'n at 11. As noted above, although Plaintiff's residence in the forum state is relevant to the jurisdictional inquiry, it is not, standing alone, a sufficient basis for exercising jurisdiction over the nonresident Moving Defendants. *See Marten*, 499 F.3d at 298; *see also Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("mere injury to a forum resident is not a sufficient connection to the forum"). Nor is Plaintiff's bald assertion that Defendants were aware of Plaintiff's state of residence sufficient to "demonstrate that [Defendants] expressly aimed [their] tortious conduct at the forum." *IMO Indus.*, 155 F.3d at 265 (emphasis in original).

Plaintiff's assertions that the corporate Defendants generally do business in New Jersey, and that New Jersey's population of Portuguese-Americans potentially creates "a substantial base for readership" of the allegedly defamatory materials in the forum, are similarly unavailing. Pl. Opp'n at 11–12; Am. Compl. ¶¶ 2-6. First, Plaintiff did not include any allegations about New Jersey's Portuguese-American population in the Amended Complaint, and it is well-established that a party may not amend a complaint in an opposition to a motion to dismiss. *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("'[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'") (alteration in original) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984)). Second, and in any event, these conclusory allegations do not identify any specific activity indicating that the Moving Defendants targeted New Jersey. Plaintiff does not allege that the Moving Defendants actively disseminate the challenged materials in New Jersey or conduct any specific business in New Jersey. To the contrary, the Moving Defendants are corporate entities and individuals based in Portugal. Am. Compl. ¶¶ 2-4, 7-9. Unlike both *Calder* and *Keeton*, where the forum states hosted a significant, purposeful circulation of the defendants' publications, the record here is devoid of evidence that demonstrates the Moving Defendants have any purposeful

---

[3] The Court analyzes Counts I-V in tandem for personal jurisdiction purposes as the same allegedly tortious acts underly all of Plaintiff's claims. Am. Compl. ¶¶ 48-92.

interaction with the State of New Jersey through their broadcasts, article publications, or otherwise. *Cf. Calder*, 465 U.S. at 788–80; *Keeton*, 465 U.S. at 772–74. That the Episodes and Article may have been viewed or read by others in New Jersey does not alter this conclusion. *See Remick*, 238 F.3d at 259 (holding that allegedly defamatory letter read by individuals in the relevant forum state was not "targeted at them" or the forum state).

Finally, to the extent Plaintiff argues in his opposition that publication of the Article online supports a finding of jurisdiction, that argument is unpersuasive. The Third Circuit has repeatedly recognized that "the mere operation of a commercially available [worldwide] web site should not subject the operator to jurisdiction anywhere in the world." *Rocke v. Pebble Beach Co.*, 541 F. App'x 208, 211 (3d Cir. 2013) (quoting *Toys "R" US, Inc.*, 318 F.3d at 452–53). Instead, there must be evidence that the defendant "directly target[ed] its web site to the state, knowingly interacting with residents of the forum state via its website." *Id.* (quoting *Toys "R" US, Inc.*, 318 F.3d at 452–53). The Amended Complaint contains no allegation that the Moving Defendants directly targeted any website publication to New Jersey. Moreover, as this Court explained in the Companion Case, Plaintiff's suggestion that New Jersey has a large Portuguese-American population who may access the allegedly defamatory materials is of "no jurisdictional significance." *DePaco*, No. 21-14409, 2022 WL 3646616, at *5 (D.N.J. Aug. 24, 2022) ("Although the Portuguese-Americans in New Jersey may have access to the Sabado website, Plaintiff does not allege that Defendants knowingly interact with the Portuguese-American population in New Jersey via the Sabado website; rather, Plaintiff simply points out the existence of this group of people in the state.") Because Plaintiff has not shown that New Jersey was "the focal point of the tortious activity," and any harm occurring there was "merely incidental," the Court cannot exercise personal jurisdiction over the Moving Defendants. *Remick*, 238 F.3d at 259; *see Scott v. Lackey*, 587 F. App'x 712, 716 (3d Cir. 2014) ("Even in the context of an intentional tort, random, fortuitous, or attenuated contacts or the unilateral activity of a plaintiff do not establish a basis for personal jurisdiction.") (internal quotation marks and citation omitted).

As Plaintiff has failed to show specific activity indicating that Defendants "expressly aimed" their allegedly tortious conduct at the forum state of New Jersey, Plaintiff cannot satisfy the "effects test" set forth in *Calder*. *See Marten*, 499 F.3d at 299.

### B.    Jurisdictional Discovery Is Not Warranted

In the alternative, Plaintiff seeks jurisdictional discovery to establish the "non-Internet minimum contacts existing between Defendants and New Jersey" and, in particular, to show "how many of the more than 77,000 Portuguese American residents of New Jersey subscribed" to the Moving Defendants' magazine. Pl. Opp'n at 15. The Court denies this request.

"Jurisdictional discovery may be permitted when the existing record is inadequate to support personal jurisdiction and a party demonstrates that it can supplement its jurisdictional allegations through discovery." *Senju Pharmaceutical Co., Ltd. v. Metrics, Inc.*, 96 F. Supp. 3d 428, 435 (D.N.J. 2015) (internal quotation marks omitted). "A grant of jurisdictional discovery lies within a district court's discretion," *Murphy*, 503 F. Supp. 3d at 225, and "should be sustained when factual allegations suggest the possible existence of requisite contacts between the defendant and the forum state with 'reasonable particularity' " *Senju Pharmaceutical*, 96 F. Supp. 3d at 435 (citing *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).

Here, Plaintiff has failed to set forth reasonably particularized allegations suggesting the possible existence of sufficient contacts between the Moving Defendants and New Jersey. The Amended Complaint makes no mention, for example, of the Moving Defendants disseminating the defamatory materials in New Jersey or targeting New Jersey residents, and is otherwise devoid of any allegations "which, if explored, might provide the 'something more' needed to bring [Defendants] within [its] jurisdiction." *Cf. Toys "R" Us, Inc.*, 318 F.3d at 456 (citation and internal quotation marks omitted). Accordingly, Plaintiff's request for jurisdictional discovery is denied.[4]

IV.   <u>**CONCLUSION**</u>

For the reasons set forth above, the Moving Defendants' Motion to Dismiss is **GRANTED**.


<u>/s/ Freda L. Wolfson</u>
Freda L. Wolfson
U.S. Chief District Judge

---

[4] Because the Amended Complaint must be dismissed for lack of personal jurisdiction, the Court need not reach the parties' remaining contentions.